**PETROLEUM CARRIER CORPORATION, a corporation, v. FLORENCE W. HALL, widow**

29 So. (2nd) 624          June Term, 1946
January 13, 1947          Division A
Rehearing denied January 31, 1947

*Samuel Kassewitz,* for appellant.

*Crawford & May,* for appellee.

TERRELL, J.:

This appeal is from a judgment awarding appellee damages in the sum of $7,500.00, predicated on the verdict of a jury. A gasoline truck and trailer, owned by appellant, collided with a Buick car and trailer, belonging to appellee. Appellee's trailer was wrecked, her goods were destroyed, and she was injured. The collision took place at the intersection of U. S. Highway 1 (State Highway 4) with State Highway 13, at Callahan, in Nassau County, Florida.

The only error relied on for reversal has to do with a charge of the court relative to the doctrine of last clear chance.

Such an assignment must be examined in the light of the evidence and the full charge. There was a charge of contributory negligence, and the trial court denied a motion for new trial. The evidence as a whole shows that the collision took place on one of the most frequently traversed road intersections in the State. There were filling stations in three corners of the intersection and a restaurant in the fourth. There were weeds and other impediments to vision, but the

road was straight and unobstructed in all directions. The plaintiff moved into the intersection at the rate of twelve miles per hour, and the defendant approached it at 40 or 50 miles per hour. It is gross negligence to approach such an intersection at that rate of speed.

The doctrine of the last clear chance was developed in aid of the injured party in cases like this. The defendant was 150 to 175 feet north of the intersection when the plaintiff moved into it and could have avoided the accident if he had been as cautious as the plaintiff was. The verdict of the jury settled the question of contributory negligence. Such were the facts that actuated the judgment and there is a dearth of reason to disturb it.

In its major aspects this case is not materially different from many others that arise from highway accidents. Some of them may be unavoidable but our experience has been that too many of them result from gross carelessness or reckless disregard of the right in common that others have on the road. In more than three hundred homes, so the reports say, we took down the mistletoe and the holly and hung up crape in response to recent Christmas revels. It was not so dangerous to face German guns and tanks in either world war.

If some heathen to whom we are dispatching missionaries should read our Christmas holiday death reports and then charge us with being highway barbarians we would be put to it to disprove the charge. What we need is a conventional code of road etiquette and to become as sensitive to it as we are to table etiquette. Some day before we have had good roads and automobiles as long as we had knives and forks we will become as civilized as we pretend to be and when we do, some wise dowager will teach us road etiquette. It will then be as rude and ill bred to act the road hog or transgress road manners as it is to eat peas with a knife or lap soup from a spoon but it will save lives by the thousands, property by the millions and go far to make the public highways as safe to traverse as the public playgrounds. It will change the holiday season from a saturnalia or gory hazards to a season of happy memories.

When Jesus placed the emphasis on the common man instead of the big shots like Kings and potentates he made democracy a reality. When we imbide road manners enough to place the emphasis on human beings rather than on speed and gadgets and scrambled gas and liquor, when we learn that the public highway is not a private estate but that it is every persons fief and is not to be trespassed, we will have the answer to the heathen's challenge and can in truth proclaim that we have extended civilization to an area long needed and prayed for.

Affirmed.

CHAPMAN, C.J., BUFORD and ADAMS, JJ., concur.