### BARNETT v. UNITED STATES.

Civ. No. 130–P.

District Court, N. D. Florida, Pensacola Division.

June 8, 1948.

Watson & Brown, of Pensacola, Fla. for plaintiff.

Geo. Earle Hoffman, U.S.Atty., of Pensacola, Fla., and Hayford O. Enwall, Asst. Dist. Atty., of Gainesville, Fla., for defendant.

DE VANE, District Judge.

Plaintiff brings this suit under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq., to recover for the death of her husband killed in an automobile accident on February 13, 1947. The complaint alleges, and the undisputed evidence shows, that early in the morning on said date plaintiff's decedent was operating a large motor truck in an easterly direction on U. S. Highway No. 98 about twenty miles east of Pensacola, Florida, when he was flagged and requested to assist a fellow traveler whose motor vehicle had become imbedded in soft sand off the hard-surfaced portion of said highway and to the north thereof. Plaintiff's decedent drove his truck to the north side of the highway and to the rear of the automobile imbedded in the sand. While he was in the process of fastening a tow-chain from the rear of his truck to the rear of the automobile in distress and being assisted by one of the occupants of said automobile in distress, a Navy truck traveling in a westerly direction along said highway, upon approaching plaintiff's decedent's truck on the north side of the highway, turned off the highway to the north into the sand, crashed into the rear of the stalled automobile, killed plaintiff's decedent and the person helping him fasten the two-chain to the rear of said distressed automobile. The accident occurred about 5:50 A. M. o'clock while it was still dark.

Defendant interposed a plea of contributory negligence on the part of plaintiff's decedent in that he parked his truck on the wrong side of the highway and failed to set out upon the highway in front and around said parked motor vehicle identifying flares required by law to indicate and reveal the stationary condition on said highway of said motor truck, and, further, that plaintiff's decedent was guilty of contributory negligence in placing himself in the direct path of traffic moving in a westerly direction that might attempt to go around said parked truck to the right thereof.

Plaintiff tried the case upon the theory that defendant's agent and employee was operating the Navy truck at a reckless and high rate of speed and that this was the proximate cause of the accident. Plaintiff introduced evidence to show that the Navy truck checked out of the Navy Countermine Measure Station near Panama City, Florida, at or about 4:20 A. M. and proceeded seventy-eight miles in a westerly direction on U. S. Highway No. 98 to the place of the accident; that time elapsed therefor was approximately one and one-half hours; and that the Navy truck stopped at Fort Walton five minutes or slightly more when the occupants of the truck attempted to get some coffee, which they could not find. Plaintiff also introduced evidence which was undisputed, that the Navy truck traveled one hundred four feet in the soft sand after leaving the paved portion of the highway before it struck the Chevrolet sedan stuck in the sand and that it knocked and pushed the Chevrolet sedan forty-six feet further before coming to a stop. The State Highway patrolman, who investigated the accident, called as a witness for plaintiff, testified that marks made by the wheels of the truck indicated that the wheels were locked and that the truck skidded in the

188

sand for that distance. The operator of the Navy truck denied he applied the brakes or skidded the wheels of the truck after driving it upon the sand. He testified he kept the truck going at a reasonable rate of speed to avoid becoming stuck in the sand himself.

To meet the evidence offered by plaintiff as to the speed of the Navy truck defendant called a witness who testified that the Navy truck's speed was controlled by a governor and that said truck could not be driven at a rate of speed in excess of forty-five miles per hour. The operator of the Navy truck also testified that he understood and believed the speed of the truck was controlled by a governor which limited its speed to forty-five miles per hour. A simple mathematical calculation as to the elapsed time for the traveling of the seventy-eight miles from the point of beginning to the point of the accident proves this testimony as to the speed of the truck to be incorrect. Considering the stop at Fort Walton and the elapsed time, it is obvious that the Navy truck was driven at a rate of speed considerably in excess of the forty-five miles per hour.

In Armstrong, Administrator v. United States,[1] which was a suit to recover for the death of the occupant of the Chevrolet sedan, killed at the same time in the same accident, brought in the United States District Court for the Western District and Western Division of Tennessee, Judge Marion S. Boyd accepted this theory of negligence and held the United States liable for the death of Armstrong.

A disposition of the case upon this claim of negligence makes it necessary for the court to dispose of the case upon conflicting testimony and as the evidence at this case at Bar fully discloses defendant's liability to plaintiff upon undisputed evidence in the case, when considered in the light of controlling Florida law, this court prefers to dispose of this case upon this uncontradicted testimony.

The operator of the Navy truck made a forthright, and the court believes, an honest, statement of exactly how the accident occurred. The evidence shows that the accident occurred along a straight, level portion of the highway, with visibility for approximately two miles east of the accident. The undisputed evidence shows that plaintiff's decedent left the bright lights burning and the engine running on his truck, but no warning flares were placed around the truck. The driver of the Navy truck testified that he saw the lights of the parked truck a long distance down the highway in front of him; that when he came within a reasonable distance of said truck he dimmed his headlights, but when the headlights of the parked truck were not dimmed, he again turned on his bright lights; and that when he was two or three hundred feet from the parked truck he realized that it was stationary on the wrong side of the highway. He testified further that at first it was his intention to pass the parked truck on the south side of the highway, but that he then realized another automobile moving in an easterly direction would prevent him doing this. He testified he had the Navy truck well under control and that he was faced with the choice of three decisions: 1) either stop his truck, which he could have easily done; 2) slow down sufficiently to let the approaching motor vehicle pass and then go around the parked truck on the south side of the road; or 3) go around the parked truck on the north side of the road by running off the paved highway. He chose the latter. He testified further that the bright lights of the parked truck and bright lights of the approaching motor vehicle completely blinded him and that he never saw the stalled Chevrolet sedan until he was in three or four feet of it. He testified further that he was so close that it was impossible for him to even attempt to apply his brakes before he crashed into the rear of the stalled Chevrolet sedan and killed plaintiff's decedent and the other person attaching the tow-chain to the Chevrolet.

The law of Florida makes it the duty of anyone operating an automobile on the highway at night to stop his car if he does not have a clear vision of what's

---

[1] No opinion for publication.[1] No opinion for publication.

188

ahead of him, because of the bright lights of another automobile shining in the opposite direction to the way he is traveling. Where the driver of such car fails to do so and by such failure has a collision with an automobile in front of him, he and his employee are guilty of negligence and liable in damages. Mathers v. Botsford, 86 Fla. 40, 97 So. 282, 82 A.L.R. 881; Cline v. Powell, 141 Fla. 119, 192 So. 628.

■■ The purpose of the Florida Statute, F.S.A. § 317.67, requiring the placing of flares in front of, along side of and to the rear of parked automobiles on the public highway is to give a warning for the protection of other travelers upon said highway and failure to do so constitutes prima facie evidence of negligence. However, in a case such as this, where the operator of the approaching automobile fully realizes that another automobile is stationary, on the wrong side of the highway, and in his path of travel, he is under the duty to exercise all due diligence and precaution and to take all such action as will avoid an emergency and avert an accident. Merchants Transportation Co. v. Daniel, 109 Fla. 496, 149 So. 401; Dunn Bus Service, Inc. v. McKinley, 130 Fla. 778, 178 So. 865; Petroleum Carrier Corporation v. Hall, 158 Fla. 549, 29 So.2d 624.

■ The court holds upon the facts in this case that, under the "last clear chance" doctrine, which prevails in Florida, defendant's agent (the Navy Truck driver) was guilty of negligence and plaintiff's husband was not guilty of such contributory negligence as would defeat plaintiff's recovery and that defendant is liable in damages to plaintiff for the death of her husband, resulting from the accident.

## Measure of Damages

■ The evidence in this case shows deceased left surviving him the plaintiff and a child not more than one day old. Plaintiff's husband was nineteen years of age at the time of his death and was earning $40.00 per week as a truck driver. Plaintiff is entitled to recover from the defendant not only for the loss of comfort and society of her husband, but also for the loss of support, the loss of his aid and assistance in the rearing of their minor child and for the loss of the support of their child during his minority. Taking into consideration the earning capacity of plaintiff's husband, the nature of the work performed by him, the support of the minor child for whom he would have been responsible until he reached his majority and which has now been shifted to plaintiff, the loss of the comfort, protection and association of her husband, by plaintiff, marital relations, character, habits and conduct of the deceased, as shown by the evidence, and all other material evidence that should be given weight and consideration, the court assesses damages in favor of plaintiff and against defendant in the sum of $15,000.00.

■ The Act of Congress under which this suit was brought requires the court to determine the amount of attorney's fee to be paid plaintiff's attorneys out of the award to her. It has been necessary for counsel for plaintiff to prosecute this case to the final conclusion and plaintiff's attorneys are entitled to receive, as compensation for their services, a sum equivalent to twenty percent (20%) of the recovery herein allowed.

A Final Judgment in conformity with this Memorandum Decision will be entered in this case.