#### LUNDY v. UNITED STATES.
Civ. No. 269–P.

District Court, N. D. Florida, Pensacola Division.

June 8, 1948.

Yonge, Beggs & Lane, of Pensacola, Fla., for plaintiff.

George Earle Hoffman, U. S. Atty., of Pensacola, Fla., for defendant.

DE VANE, District Judge.

This is a suit brought under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq., in which the plaintiff seeks to recover damages for the death of her husband and for injury to herself sustained in an automobile accident.

The complaint alleges that on April 25, 1945, at about 6:30 p.m. o'clock, plaintiff was riding as a passenger in a motor vehicle which was being operated by her husband, E. H. Lundy, in an easterly direction of U. S. Highway No. 90 in Escambia County, Florida, just east of the intersection of said highway with the Nine Mile Road. At the time and place certain employees of the Navy Department of the United States, acting within the scope of their office and employment, were towing by truck in a westerly direction, a SNB-20 Beach Craft Airplane, from which the wings had been removed, but which, nevertheless, occupied practically the entire hard-surfaced portion of the highway.

Count No. 1 of the complaint alleges that the accident was due to the carelessness, negligence and recklessness of the employees of the United States. Count No. 2 alleges that the accident was the result of a wrongful act of the employees of the United States. And Count No. 3 alleges that the wrongful act was wilfully, wantonly and recklessly done and committed.

Defendant interposed eighteen defenses. A Motion was made to strike many of these defenses on numerous grounds, which the court took under advisement until the trial. The court now holds that sixteen of the defenses are good and will strike the seventeenth and eighteenth defenses.

The defenses fall into four general classes. First, the negligence of the deceased was the sole proximate cause of the accident. Second, that the deceased and plaintiff were both guilty of contributory negligence. Third, that plaintiff and deceased were engaged in a joint enterprise. And fourth, that the deceased was physically handicapped in that his vision was impaired, which fact was well-known to

plaintiff and that both the deceased and plaintiff were guilty of contributory negligence in the operation of deceased's automobile.

The evidence, which is in a large part uncontradicted, shows that the airplane involved in the accident sustained an injury in landing at a field some miles east of Milton, Florida. The wings were removed and the tail of the airplane placed on an open-bodied truck and it was being towed, tail-first, behind the truck along the highway towards an air field near Pensacola, Florida, where it was to be repaired. State Highway patrolman and two additional Navy trucks made up the caravan that was moving the plane from the point of injury to the point where it was to be repaired. The Highway patrolman, in his patrol car, accompanied by a Naval Officer, led the caravan. Two Navy trucks were in the rear of the airplane. The patrolman proceeded at a distance of more than two hundred feet ahead of the truck pulling the airplane. The warning lights of the patrol car were on and flashing continuously. The patrolman operated his patrol car down the center of the highway and signaled oncoming traffic off the highway.

The evidence shows that the plane was 16', 1½" wide across the wing stubs; 15', 3" wide across the tail and 12', 11" wide between the wheels. The paved part of the highway at the point of the accident was 20', 6" wide. The Lundy truck was 6', 1" wide. The rudder or fin on the tail assembly was 68⅝" above the pavement. The wing stub was 56⅜" above the pavement. The Lundy truck cab was 75½" above the pavement. It was a pick-up type truck. Witnesses are not in agreement as to the speed of the carrier of the plane. Various witnesses gave various estimates between ten and twenty-five miles per hour. The testimony as to the speed of the Lundy truck varies from thirty to forty-five miles per hour.

The Highway patrolman testified that Lundy paid no attention to the warning signals on his patrol car or to the signs given by him. He testified that Lundy disregarded the position of the patrol car in the highway and that it was necessary for him to turn to the right side of the road to avoid the oncoming Lundy truck. He testified further that Lundy did not slacken his speed prior to the accident.

In approaching the Navy caravan transporting the airplane Lundy rounded a broad curve in the highway, but the caravan was visible for eight hundred or one thousand feet before the collision. Plaintiff testified that her husband saw the approaching caravan some distance down the road and called her attention to it. She was uncertain as to how far they were from the caravan when her attention was called to it, but she testified that she was not in any way excited and that she was entirely confident they would pass the caravan and airplane without accident. In response to a question from the court, she testified that neither she nor her husband felt any fear and that she thought they could drive under the wing stub of the airplane.

The evidence shows that the shoulders of the road were in good condition at the point of the accident and that there was enough room on either shoulder for an automobile to have passed the caravan without difficulty. The evidence further shows that the left-hand front edge of the cab of the Lundy truck caught on the wing-stub of the airplane and that the left front wheel of the Lundy truck struck the right wheel of the airplane inflicting considerable damage to both. The impact tore the top off the cab of the Lundy truck, knocked the truck against a mail box post some feet distance from the highway and that the Lundy truck then veered to the left and struck the last Navy truck in the caravan. This impact threw plaintiff out of the truck severely injuring her, killed her husband and almost demolished the Lundy truck.

The evidence of the Navy employees accompanying the caravan was to the effect that it was necessary to keep both wheels of the airplane on the pavement to prevent the airplane overturning and that the airplane had occupied this position on the highway throughout the tow; that it was therefore necessary for approaching traffic to drive off the hardsurfaced pavement in order to go around the airplane; and the purpose of placing the patrolman some distance in front of the caravan was to warn oncoming traffic to get off the highway.

Considerable testimony was offered as to the impaired vision of Lundy. He had suffered with a cataract over the sight of both eyes and some years before the accident was almost totally blind. His driver's permit had been taken from him and for some time he had not been permitted to operate an automobile. In 1940 the cataract over his left eye was removed by an operation and he was fitted with glasses that provided a normal 20-20 vision in that eye. He was still blind in the right eye on the date of the accident. After the successful cataract operation he was granted a Restricted Daylight Driving Permit and held such a permit at the time of the accident in 1945.

Plaintiff testified that she generally accompanied her husband whenever he operated an automobile and that he never operated any automobile except in daylight. Expert testimony was introduced by plaintiff to the effect that any one with a normal 20-20 vision in one eye was perfectly capable to operate an automobile and that the loss of sight in one eye was not a serious handicap.

■ In support of the allegations of negligence of defendant's employees, contained in Count No. 1 of the complaint, plaintiff relies upon statutes of Florida making it unlawful to obstruct a public highway and other statutes of Florida specifying the width of vehicles permitted on public highways and still other statutes requiring oncoming traffic to yield one-half the highway to approaching traffic. These statutes are, of course, applicable to motor vehicle traffic. There is no statute in Florida that prohibits the moving of a house or an airplane or any other large obstruction down a highway, unless the statutes applicable to motor vehicles are expanded to apply to such traffic. It is general knowledge that the practice of moving small houses down public streets and highways in Florida is not uncommon and the practice of moving disabled airplanes down public highways was not uncommon during the war, nor since.

The evidence in this case clearly shows that plaintiff and her husband saw the approaching caravan towing the airplane while several hundred feet from it and plaintiff and her husband were aware that the airplane almost completely occupied the paved portion of the highway. The truck towing the airplane was moving at a slow rate of speed and the speed at which plaintiff's husband was traveling was not excessive. The evidence shows, however, that plaintiff's husband did not slacken his speed, but drove headlong at the same rate of speed into the wing stubs of the airplane. Its position had not changed in the highway from the time plaintiff and her husband saw it until the accident occurred.

■ It is the law in Florida that where the driver of a motor vehicle, after seeing an oncoming vehicle across the center line of the road, fails to slacken his speed or slow down or stop his motor vehicle if it is necessary to avoid an accident, is guilty of such negligence as to entitle an injured party to recover for an injury sustained in an accident which follows. Merchants Transp. Co. v. Daniel, 109 Fla. 496, 149 So. 401; Dunn Bus Co. v. McKinley, 130 Fla. 778, 178 So. 865; Petroleum Carrier Corporation v. Hall, 158 Fla. 549, 29 So.2d 624. The cases just cited are cases in which the defendant was found guilty of the type of negligence just described, rendering him liable. While the court does not have before it any counterclaim for damages sustained by defendant, the law announced in these cases is, nevertheless, controlling in this case.

■ The court finds from the evidence in this case that the negligence of Lundy was the sole proximate cause of the accident and that plaintiff has no cause of action under Count No. 1 of the complaint for the death of her husband. See O'Brien v. Standard Oil Company of Kentucky, 5 Cir., 38 F.2d 808; Miller v. Union Pac. R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285.

■ ■ While the negligence of plaintiff's decedent also defeats plaintiff's right to recover for the injuries she suffered in the accident (Fuller v. Darnell, 100 Fla. 773, 129 So. 915, 74 A.L.R. 1; Sea Board Air Line Ry. Co. v. Watson, 94 Fla. 571, 113 So. 716, 720), the court finds from the evidence that plaintiff was also guilty of contributory negligence which defeats her right to recover under Count No. 1 of the

complaint. She was as much aware of the oncoming airplane as was her husband and she made no effort to warn her husband of the danger. As stated above, the operator of the truck towing the airplane committed no act after the caravan became visible to plaintiff that contributed in any way to this accident. He maintained the position on the highway which he had held throughout the towing and which he was compelled to maintain.

It was perfectly obvious to any one who looked at the approaching truck and tow that it would be necessary for any traffic moving in the opposite direction to drive off the paved portion of the highway in order to avoid an accident. It became, and was, plaintiff's duty to call this fact to the attention of her husband and her failure to do so makes her guilty of contributory negligence, defeating her right to recover under Count No. 1 of the complaint. Davis v. Chicago R. I. & P. R. Co., 10 Cir., 159 F. 10, 16 L.R.A.,N.S., 424; Brommer v. Pennsylvania R. Co., 3 Cir., 179 F. 577, 29 L.R.A.,N.S., 924.

Count No. 2 charges defendant with the commission of a wrongful act in placing an obstruction upon a public highway that completely blocked the paved portion of the highway and Count No. 3 charges that such wrongful act was wilfully, wantonly and recklessly done and committed, and that such act of defendant makes defendant liable without regard to the negligence of plaintiff or her husband. Counts No. 2 and No. 3 are predicated upon language found in the Federal Tort Claims Act, which makes the Government liable for a wrongful act as well as the negligence of its servants and employees. To hold defendant liable under these Counts of the complaint it is necessary for the court to find that a wrongful act was committed by defendant.

The court has pointed out above that there is nothing unusual in the movement of objects that completely block the highway along public highways in the State of Florida and that there is no law prohibiting the same. It is the opinion of the court that the words, "wrongful act" as used in the Federal Tort Claims Act are not applicable to a case such as this. If the airplane had been left on the highway at night without adequate warning lights to protect traffic on the highway or if it had been moved along the highway without adequate warning to oncoming traffic a different case might be presented. Here, however, the Navy truck pulling the airplane was preceded by a State Highway patrolman giving adequate warning to oncoming traffic. There is no rule of law that permits any one to run headlong into an obstruction upon a public highway and recover damages resulting therefrom, simply because the obstruction had no legal right on the highway.

It is clear from the evidence in this case that plaintiff and her deceased husband both saw the airplane with the caravan in the highway when they were sufficient distance from the same to have readily stopped their automobile. The evidence further shows that the shoulders of the highway were sufficiently broad and of such condition as to have permitted plaintiff's deceased husband to have easily driven around the oncoming airplane or ran off the paved portion of the highway and stopped until the airplane and its caravan could pass him. This tragic accident could easily have been avoided and would not have happened, except for the gross negligence of plaintiff's decedent.

The court holds that plaintiff is not entitled to recover upon any of the counts of the complaint.

A judgment will be entered for the defendant.