100 So.2d 146 (1958)
Carolyn B. WEBER and William C. Weber, Appellants,
v.
Albert A. PORCO, Appellee.
Supreme Court of Florida.
January 29, 1958.
Wheeler & Pelzner, Miami, for appellants.
Wicker & Smith and Jack A. Sudduth, Miami, for appellee.
THORNAL, Justice.
Appellants Carolyn B. Weber and William C. Weber, husband and wife, who were defendants in the court below, seek reversal of a summary judgment on a counterclaim filed by them against appellee Porco, who was plaintiff below, in an automobile negligence case.
*147 The points before us are whether there was a genuine material issue of fact sufficient to preclude the entry of a summary judgment and also whether a wife who owns an automobile is bound by the contributory negligence of her husband while he is driving the car.
The parties were involved in an automobile collision at an intersection in North Miami. The accident occurred at approximately 10:00 A.M. Plaintiff Porco was proceeding west on Northeast 125th Street, which is a through street. Defendants Weber were traveling north on Northeast 9th Avenue and stopped momentarily at a traffic control stop sign. By his deposition, Mr. Weber stated that he looked to his left and saw no car approaching; he then looked to the right and saw a white automobile proceeding in a westerly direction at an estimated distance of 300 feet east of the intersection. His glance to the right lasted about one second and he could not and did not judge the speed of the approaching vehicle. Having stopped, Mr. Weber then immediately began to cross the intersection looking straight ahead.
Northeast 125th Street is a broad thoroughfare containing three eastbound lanes and three lanes for westbound traffic. Mr. Weber crossed the south three eastbound lanes and proceeded north across the center of the street into the westbound lanes. At a point somewhere north of the center of the three lanes for westbound traffic Mrs. Weber saw the approaching Porco automobile and exclaimed that they were going to be hit. She was absolutely correct. The resultant collision caused the Weber Cadillac to hurtle over into a vacant lot on the northwest corner of the intersection. It put Mrs. Weber into the hospital with numerous broken ribs and other injuries. It caused the Chevrolet Corvette operated by Porco to roll over several times, casting Porco himself out of the automobile and causing him to turn numerous somersaults in the process and ultimately to wind up in the hospital for several weeks.
The Webers stated on deposition that they concluded that the Porco automobile was sufficiently far enough away to enable them to negotiate the intersection safely They did this, so they say, at a speed under 20 miles per hour. It is Mrs. Weber's recollection that when the Porco Corvette bore down on them it was being driven at approximately 45 miles per hour. As would be expected, Mr. Porco has an entirely different version. From his point of view he saw the Weber Cadillac stopped at the stop sign on the south side of the street when he was some 25 to 30 feet east of the intersection. According to his version, in a split second the Webers propelled themselves across the three south traffic lanes and into the middle of the north traffic lane immediately in front of his Corvette. Similarly, Mr. Porco asserts that he was traveling approximately 15 miles per hour.
How all of the resultant damage, both vehicular and physical, could have been the product of the abundant caution which each driver asserts he exercised is an aspect of the occurrence leading us to the notion that there was a sufficient factual conflict which would preclude the entry of a summary judgment. The summary judgment came about in the following fashion. After everybody got out of the hospital they proceeded to sue one another. Originally Mr. Porco filed a complaint against Mrs. Weber, the owner of the Cadillac, and her husband the driver thereof. The Webers denied negligence, alleged Porco's contributory negligence and, on their part, filed a counterclaim against Porco claiming that his negligence produced the physical injuries to Mrs. Weber as well as the damage to her Cadillac. In reply to the Weber counterclaim, Porco in turn alleged that the Webers couldn't recover because Mr. Weber's negligence in the operation of his wife's automobile proximately contributed to her injury and damage. Porco then moved for a summary judgment against the Webers on their counterclaim. On the basis of the factual situation summarized above the trial judge granted Porco's request *148 for a summary judgment and dismissed the counterclaim. Reversal of his order in doing so is now sought.
The Webers contend that there were sufficient factual conflicts to justify taking the matter to a jury and moreover it is their view that Mrs. Weber, the owner of the Cadillac, would not be bound by the alleged contributory negligence of her husband, the driver.
In defense of the order of the trial judge granting summary judgment, Mr. Porco contends that the alleged negligence of Mr. Weber was crystal clear, that there was no genuine factual issue on material aspects of the case and that as a matter of law Mrs. Weber, the owner, was bound by the contributory negligence of her husband, the driver.
As indicated above it appears to us that out of the welter of conflicts as to speed, caution exercised, and reasonable inferences that could be drawn from the factual statements of the contesting parties, a jury question was indicated on the matter of proximate cause. While summary judgment proceedings have done much when properly employed to expedite the disposition of litigated causes, we have consistently adhered to the proposition that when the depositions or affidavits submitted in support of a motion for summary judgment suggest a factual conflict or present a situation on which a jury might properly draw varied conclusions from the record presented, then it is not proper to grant a summary judgment. The record here tenders an almost typical intersection collision with varied stories as to speed, caution and ultimate responsibility for the near tragedy.
We do not lose sight of the fact that Mr. Porco was traveling a so-called through street. This fact alone, however, does not endow him with the privilege of proceeding indiscriminately at an unreasonable speed under the circumstances as the Webers allege nor does it immunize him from all responsibility to exercise reasonable care suggested by the surrounding circumstances. As to whether he could or should have observed the hazardous position of the Webers and whether having done so he could have ultimately avoided the collision by the continued exercise of such care is a further aspect of the matter which appears to us to justify jury consideration. Dunn Bus Service, Inc. v. McKinley, 130 Fla. 778, 178 So. 865; Petroleum Carrier Corp. v. Hall, 158 Fla. 549, 29 So.2d 624.
Having therefore concluded that the entry of the summary judgment was error, we could relieve ourselves of further responsibility by simply reversing the judgment under assault. In view of the fact, however, that the parties have raised the legal question as to the liability of the owner-wife for the contributory negligence of the driver-husband and further inasmuch as this case will have to be returned to the trial court for ultimate trial, we think it to be in the interest of an orderly administration of justice to dispose of the critical legal point presented by the record.
It was the view of the trial judge that when a wife owns an automobile and entrusts it to her husband to operate and he operates it in such fashion as to produce damage and injury to someone else as well as to his wife and himself, then the wife is responsible in law for the contributory negligence of the husband. Mrs. Weber contends for the proposition that the relationship of husband and wife is not a sufficient basis out of which to impute the husband's negligence to the wife even though she is riding in her automobile as a passenger, albeit at the time she is minding her business and has not assumed the wife's traditional prerogative of directing operations from the back seat.
We think the conclusion reached by the trial judge on this aspect of the matter is absolutely sound and we do not consider it necessary to clog the judicial machinery with incidental problems such as whether she was exercising control or whether she and her husband were at the time engaged *149 in a joint enterprise. It is not necessary to delve into these related factual situations. The correctness of the conclusion that an owner-wife is bound by the contributory negligence of a driver-husband, we think, can be resolved by a brief reference to our innumerable decisions announcing the adherence of this court to the so-called dangerous instrumentality doctrine as applied to automobiles. Beginning with Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A. 1917E, 715; also Id., 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, and following the long line of decisions since then, this court has consistently applied the rule of respondeat superior in recognizing the liability of an owner of an automobile for the negligent operation of his automobile by one who drives with his expressed or implied permission, knowledge or consent. It appears to us that there could be no question as to the liability of Mrs. Weber to Mr. Porco if Mr. Weber, driving his wife's automobile with her knowledge and consent, negligently injured Mr. Porco. Greene v. Miller, 102 Fla. 767, 136 So. 532. Consistently we have announced that this rule of liability rests on an application of the principle of respondeat superior. In other words, as a matter of law the relationship of principal and agent is raised out of the factual situation. When one permits another to operate his automobile under his license, he becomes as a matter of law the principal and the driver becomes his agent for the purpose.
Admittedly, in some states which have refused to follow the so-called dangerous instrumentality rule in automobile cases, the negligence of a driver will not necessarily be imputed to the owner who happens to be riding in the car as a passenger. The decisions of these states are not helpful in Florida where we have for years applied, we think quite justifiably, the dangerous instrumentality rule.
To avoid any erroneous impression, we emphasize that the negligence of the husband in this situation is not being imputed to the wife merely because of the relationship of husband and wife. The wife is burdened with the husband's negligence because she owns the automobile and permits him to drive it. The same burden would be imposed upon her if her car were being driven by her Aunt Susie or Daniel, the yardman. Inasmuch as the wife, Mrs. Weber, in this instance would be liable to Mr. Porco if Mr. Weber negligently caused injury and damage, it seems to us to be a matter of simple logic that in turn if the driver of her automobile proximately contributed to her own injury and damage, she is likewise burdened with his negligence.
The judgment granting the summary judgment is, therefore, reversed and the cause is remanded for further consideration consistent herewith.
Reversed and remanded.
TERRELL, C.J., and THOMAS, ROBERTS, DREW and O'CONNELL, JJ., concur.