ALLEN, Judge
(dissenting).
I would reverse the trial court in this case.
This appeal was taken by the plaintiff below from a directed verdict entered in favor of the defendant at the conclusion of the plaintiff’s testimony.
The circuit judge directed the verdict after concluding that although the defendant was guilty of negligence, the plaintiff was guilty of contributory negligence.
The facts show a typical intersectional collision. The plaintiff was driving north on the Dixie Highway in Hollywood, Florida. The defendant was driving west on McKinley Street. The Dixie Highway was a through highway from Miami to Jacksonville and the heavier traveled street, but was not marked as a through street, and the trial judge determined that priority should be accorded McKinley Street in the instant case because the defendant was a traveler on the right. So, for the purpose *85 of this case, it was held that the plaintiff had the primary duty to give way to traffic ■on McKinley Street.
The defendant, a doctor, had just crossed a railroad track on McKinley Street and was proceeding slowly toward Dixie Highway because, as he testified, he saw a hitchhiker walking on the street and, also, the sun was shining in his eyes. Plaintiff testified that when he was about 50 or 60 yards away from the intersection, traveling between 30 and 35 miles an hour, he observed the defendant crossing the railroad tracks. Neither of the parties slowed down and the ■collision occurred when the plaintiff applied bis brakes and skidded approximately 54 feet, after applying his brakes, into the defendant’s car, striking it on the left rear.
Admittedly, the facts in this case present a rather close question. Usually questions ■of contributory negligence and proximate •cause are held to be purely jury questions. I would so hold in this case and reverse the lower court and remand for a new trial.
A companion riding in the plaintiff’s ■car, Wensel Estes, stated that as the plaintiff’s car approached the McKinley Street intersection he noticed another vehicle on McKinley Street coming off the railroad •tracks toward Dixie Highway (witness Bianco said it was 45 feet from the railroad tracks to the east line of Dixie Highway) and that at this time the plaintiff’s •car was about 50 to 60 yards from McKinley. When he first saw this car it was on the railroad track going about 10 miles per hour and that the plaintiff was going somewhere between 30 and 35 miles per bour; that as they approached McKinley Dr. Hege’s car (the defendant) kept coming ■onto the highway and about 50 feet away Estes told the plaintiff to “watch that car” .and plaintiff applied the brakes and skidded into the impact.
The witness further stated that the defendant did not stop and continued into Dixie Highway at the same rate of speed which he estimated at between 5 and 10 miles an hour; that the plaintiff applied the normal reflexes that anyone would under the driving conditions, that he applied the brakes and skidded, trying to stop before he hit the car; and that the defendant came over and said that he did not see plaintiff and that it was his, defendant’s fault.
The defendant, Dr. John R. Hege, Jr., was called as an adverse witness and testified when asked if he had heard the previous witness’ testimony that he had. He then was asked this question:
“Q. Did he report the conversation that you had with him right after the impact as correctly as you remember it? A. I don’t know, sir. All I remember stating is that I did not see him.
“Q. All right, doctor, May I ask you why you didn’t see them, was there anything in your way? A. For one thing the sun was just setting or was in setting position and shining in my eyes.”
Then he testified that he did not see the plaintiff’s car at all.
The plaintiff, Coley B. Riles, Jr., in effect, testified:
“A. Well, as I was coming up to the intersection I noticed that a car was on the railroad tracks and that it was going slow, I wouldn’t say how far away I was, I don’t remember exactly, and it come on across the railroad track and I just know that the traffic in general around me, his car. was going five or ten miles an hour, and I was coming on down the highway and he was slow and I assumed that he was going to stop because traveling that slow I believed that he would stop, when they got to stop they usually travel slow.”
He further stated that he was going approximately 30 miles an hour and then tes> tified as follows:
“Q. When you saw the other car start to proceed over the railroad track *86 tell us what happened. A. Well, as he was coming across the railroad track, like I said he was going slow and I assumed he was going to stop. I took a look at traffic in general which anybody driving an automobile does, they look to see that everything is functioning properly while they are under the steering wheel of the automobile. And when I got approximately say fifty or sixty feet away from him I noticed that he wasn’t going to stop, by that I mean that he had, I am not sure but I think that he had already started to proceed into the intersection, and he was still traveling at the same rate of speed. So I immediately applied my brakes and at the same time Mr. Estes said ‘Watch out,’ and that is all I can remember him saying is just ‘Watch out.’ And at the same time he said that I was also applying the brakes at the same instant, and I skidded into the doctor’s car which just crept right out in front of me and he didn’t accelerate to pick up any speed or anything to get out of the way. And so I just did the best I could to stop. That was the only thing I could do.”
On cross-examination the following question was asked the plaintiff and he gave the following answer:
“Q. When you first saw Dr. Hege, about how far were you from the middle of the intersection at that time ? A. Well, it is kind of hard to say, from the middle of 'the intersection it has been two1 years and the only thing I can remember is how far away I was approximately when he was pulling out or wasn’t going to stop. I don’t remember how far away I was when I saw him on top of the tracks.”
Again on cross-examination the following testimony took place :
"Q. Now it would be correct, wouldn’t it, according to your observation, when you-did become aware of him, his front wheels were going over that set of tracks nearest to you at that time, would that be true? A. Well I noticed that whenever he was starting' to pull out I tried to stop and do everything I could to avoid hitting him.
“Q. Yes, sir. But my question was when you first became aware of him' at that time, his front wheels were passing over the railroad tracks nearest to you, is that correct? A. Yes, sir,, that was the first time I noticed him.
“Q. And yet at that time you looked' on away from Dr. Hege? A. Yes, sir. I assumed that he was going to stop.
“Q. And you completely directed' your attention from him ? A. I directed my attention from him as for looking around to see what was going on about me besides him.
“Q. You started to looking at traffic generally ? A. That’s right because he wasn’t the only car that was on the highway.
* * * * * *
“Q. Now you had proceeded some distance in the meantime, hadn’t you? A. Yes, sir, I don’t know how far I had proceeded though, and like I say I don’t know how far away I was when he was on the railroad track.”
Sergeant John Bianco, a police officer, stated, in answer to the following question:
“Q. How far was it from this lateral extension of the curb line that forms the east side of the intersection of Dixie Highway and McKinley — how far is it from that line back to this first railroad track?
“Mr. Rubin: I asked him and I don’t think he knew.
“A. I would say 45 feet.”
The appellant relies primarily on Kuhn v. Telford, Fla.App.1959, 115 So.2d 36, as being similar to this case. The facts, however, in the Kuhn case are different in *87 many ways from the instant case and cannot be cited as authoritative here.
A directed verdict upon a finding of contributory negligence as a matter of law is improper unless the plaintiff’s conduct is so clearly negligent that reasonable men could not differ on the inferences to be drawn from such conduct and that such negligence proximately contributed to the resulting damage.
Mr. Justice O’Connell stated, in an opinion in 6345 Collins Avenue v. Fein, Fla. 1957, 95 So.2d 577, at page 580:
“Where the evidence on the question is in conflict, the absence or presence of contributory negligence is a question to be decided by the jury. But where the undisputed evidence shows that plaintiff is guilty of negligence which contributes to the proximate cause of his injury it becomes the duty of the court to direct a verdict against the plaintiff and failure to do so is reversible error. Faulk v. Parrish, Fla. 1952, 58 So.2d 523. When the evidence shows that plaintiff’s negligence appreciably caused the accident there is nothing to submit to the jury. Fields v. Quillan, Fla.1954, 74 So.2d 230, Becksted v. Riverside Bank of Miami [Fla. 1956, 85 So.2d 130], supra.”
The main contention in the instant case is that the plaintiff below violated the model traffic code by failing to yield the right of way and such violation is a prima facie case of negligence.
In a case decided by this court, Bryant v. City of Tampa, Fla.App.1958, 100 So.2d 665, we held that the fact that a police officer was speeding in violation of a city ordinance at the time of an intersectional collision created a prima facie showing of negligence, but it was a jury question to determine whether or not the prima facie evidence was overcome by other evidence of existing facts and circumstances. In accord see Allen v. Hooper, 126 Fla. 458, 171 So. 513 and Gudath v. Culp Lumber Co., Fla., 81 So.2d 742, 53 A.L.R.2d 846; Crosby v. Donaldson, 95 Fla. 365, 116 So. 231.
In the case of City of Tallahassee v. Ashmore, 158 Fla. 73, 27 So.2d 660, it was held proper to deny defendant’s requested instruction that, if plaintiff failed to yield the right of way contrary to an ordinance, the verdict should be for defendant. To find that plaintiff in violating the ordinance was contributorily negligent as a matter of law, the essential question is could reasonable men differ as to whether such violation constituted a breach of a duty owed to defendant which proximately caused the accident. Even though a traffic ordinance violation is only evidence of negligence, if the circumstances are such that, viewed in a light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent, a directed verdict for defendant would not be improper, assuming such negligence proximately contributed to the accident.
In the case of Mason v. Remick, Fla.App. 1958, 107 So.2d 38, 39, this court, in an opinion by a very able associate judge, the late Terry B. Patterson, reversed a summary judgment entered for the defendant. This was another intersectional case in which summary judgment was entered based on the plaintiff’s deposition in which he admitted that he did not look in the direction from which defendant appeared after he, the plaintiff, had approached within “maybe 10 or 20 feet” of the intersection and did not actually see defendant’s car until the collision. Whether defendant had stopped prior to entering the intersection or how fast defendant entered the intersection is not settled one way or the other by the deposition. The summary judgment was entered on the ground that a motorist is charged with seeing what is plain to be seen and is guilty of negligence if he fails to use his faculties to see what is plainly observable by the ordinary use of the faculty of vision.
The court, in its opinion, said:
“We think it was error to enter summary judgment in this case. Plaintiff’s *88 deposition establishes that he was trav-elling on a through street and under the ordinance had the right of way-over defendant. While still under the obligation to use reasonable care and caution to avoid a collision even to the extent of yielding his right of way if reasonably necessary, nevertheless under the circumstances he had the right to assume, until put upon reasonable notice to the contrary, that any motorists on 17th Avenue would obey the traffic ordinance and yield to him the right of way.
“Even where the evidence is not in dispute, when conflicting reasonable inferences may be drawn from the admitted facts, question of negligence and negligent causation are peculiarly questions of fact which should be permitted to go to the jury. Here the extent of plaintiff’s reliance on his right of way, the assumption that defendant would yield, as well as every other aspect of this collision which a trial might develop are questions to be considered by a jury in deciding the ultimate fact of causative negligence. Weber v. Porco, Fla., 100 So.2d 146.”
The facts in Mason v. Remick, supra, are, in legal effect, practically identical with the facts in the instant case. The lower court granted a summary judgment in the Mason case in favor of the defendant because of the plaintiff’s contributory negligence in failing to see the defendant’s automobile until time of the collision. While in the instant case, the lower court apparently granted a directed verdict against the plaintiff because he, after seeing the defendant crossing the railroad track, looked away from the defendant’s car and drove into the intersection where the defendant had the right of way and which the lower court determined was contributory negligence as a matter of law. A consideration of the testimony of the plaintiff under the evidence most favorable to him, which a jury would be entitled to believe, shows that as he was coming up to the intersection he noticed that a car was on the railroad tracks, which were about 45 feet from the intersection, and that it was going slow. Plaintiff did not say how far from the intersection he was; he did not remember exactly. He said that defendant was going between 5 and 10 miles an hour and he assumed that defendant was going to stop because he was. traveling so slow; that plaintiff took his. eyes off to glance at the traffic ahead and' on glancing back he observed the defendant some distance away in the intersection and', applied his brakes which, according to another witness, slid his car some 54 feet into-the defendant’s car. The defendant himself' testified that he did not see the plaintiff’scar, the sun was in his eyes and he was. watching someone else on the highway- and, according to the witness Estes, defendant stated he had not seen the plaintiff and it was his, defendant’s, fault.
The plaintiff’s witness, Estes, also stated that he first saw the defendant’s car on the railroad track; that the defendant did not increase or decrease his speed; that when he first noticed any danger that there might be a collision was when he approached McKinley; that the defendant’s car kept coming onto the highway and about 50-feet away he hollered at the plaintiff who-applied brakes and skidded into the defendant’s car.
In Weber v. Porco, Fla.1958, 100 So.2d 146, 148, the parties were involved in an. automobile collision at an intersection., Porco, the plaintiff, was traveling on a. through street. A summary judgment was. entered for him and defendants appealed. The plaintiff was proceeding west on a through street while the defendants were-traveling north and had stopped momentarily at a traffic control stop sign. The-defendant stated in his deposition that he looked to his left and saw no car approaching, he then looked to his right and saw a white automobile proceeding in a westerly direction at an estimated distance of 300-feet east of the intersection. His glance to the right lasted about one second and he-could not and did not judge the speed of: *89 the approaching vehicle. Having stopped, Mr. Weber then immediately began to cross the intersection looking straight ahead.
Weber further stated on deposition that he concluded that the Porco automobile was sufficiently far enough away to enable him to negotiate the intersection safely; that he was driving at a speed under 20 miles an hour; and that Porco bore down on him at approximately 45 miles per hour.
Porco moved for a summary judgment •against the Webers on their counterclaim. In reversing the trial judge, the Florida 'Supreme Court, in an opinion by Mr. Justice Thornal, said:
“As indicated above it appears to us that out of the welter of conflicts as to speed, caution exercised, and reasonable inferences that could be drawn from the factual statements of the contesting parties, a jury question was indicated on the matter of proximate cause. * * * The record here tenders an almost typical intersection collision with varied stories as to speed, caution and ultimate responsibility for the near tragedy.
“We do not lose sight of the fact that Mr. Porco was traveling a so-called through street. This fact alone, however, does not endow him with the privilege of proceeding indiscriminately at an unreasonable speed under the circumstances as the Webers allege nor does it immunize him from all responsibility to exercise reasonable care suggested by the surrounding circumstances. As to whether he could or should have observed the hazardous position of the Webers and whether having done so he could have ultimately avoided the collision by the continued exercise of such care is a further aspect of the matter vuhich appears to us to justify jury consideration. Dunn Bus Service, Inc. v. McKinley, 130 Fla. 778, 178 So. 865; Petroleum Carrier Corp. v. Hall, 158 Fla. 549, 29 So.2d 624.” (Emphasis added.)
A factual question in the instant case is apparent. The defendant, although he was driving the car on the right, drove into the intersection with the knowledge that the sun was in his eyes and without looking to see whether another car was approaching from the Dixie Highway, which, although not a stop street, was the more heavily traveled street of the two. It cannot be said as a matter of law that, had the defendant observed the traffic before entering the intersection, he could not have seen the plaintiff’s car approaching at a much faster speed than he was driving. Thus the defendant’s entrance into the intersection would be evidence which a jury could find was the proximate cause of the collision.
In the case of Sinitz v. Shapiro, Fla.App. 1958, 100 So.2d 458, 460, the Third District Court of Appeal, in an opinion by Judge Drew, reversed the trial judge in an action by a pedestrian against an automobile driver for personal injuries which he received when the automobile of the defendant backed into him while he was standing on a curb near the rear end of the automobile. The judgment was based upon the contributory negligence of the plaintiff. The facts set out in the opinion were that the defendant’s car was parked adjacent to the curb, with its rear end very close to the crosswalk at the intersection. There was a car parked in front of defendant’s car but none at the rear. The plaintiff was standing on the curb near the rear of defendant’s car and his testimony was that the defendant backed up his car without any warning and struck him on the knee, resulting in injuries. There were no windows in the truck on either side of the front door. There was, however, a window in the back of the truck but from the driver’s seat the driver could not see a person standing near the rear of the car on the right-hand side. No warning was given and the defendant backed up the car and hit the plaintiff. The plaintiff knew that the car was directly in front of him and that the only way he could get out of there was to back up. He heard him get in the car, start the *90 motor, and he continued to stand in the same spot on the curb. Plaintiff’s testimony was to the effect that the car backed up and struck him without a reasonable opportunity for him to get out of the way. The court, in its opinion, said:
“We think the conclusion is inescapable from the above related facts, as well as from the conclusions reached by the trial judge that, under the law and the decisions of the Supreme Court and this Court, a factual issue was involved which required a submission of the case to the jury and that the court erred when he granted the directed verdict. Under the evidence the jury could have assumed that the car of Shapiro was placed in motion without previous warning and that the overhanging fender struck the plaintiff who was lawfully standing on the curb. The jury could have found that the automobile was removed from its place along the curb without any previous warning and that the plaintiff was not negligent in failing to observe it or in failing to get out of the way of it. The jury could have inferred that the plaintiff was standing at the curb waiting to cross the street and looking at the traffic light and that his attention was thereby diverted which would have justified his assertion that he did not see the car move toward him.”
In Mele v. Summers, Fla.App.1959, 113 So.2d 254, 256, another intersection case was decided by this court in which the trial judge was reversed for granting a motion for summary judgment in favor of defendants, and the case was sent back for trial. The facts in this case, as set forth in the opinion, were that the automobile owned by the plaintiffs collided with a truck owned by Wilson and Toomer Fertilizer Company and driven by its employee, Summers. At the close of the plaintiff’s case there was a motion for directed verdict and the judge indicated his intention of granting the motion so the plaintiffs took a non-suit.
The suit was refiled and issues were again joined on the allegations of negligence and of contributory negligence. Defendants then filed their motion for summary final judgment which was granted.
Mele, the plaintiff, was driving easterly on Los Olas Boulevard in Fort Lauderdale and stopped before entering Seventh Avenue and looked for on-coming traffic. There were no stop signs or traffic signals and neither street was a through thoroughfare. The plaintiff observed lights of the truck approaching from the right approximately 270 feet away. Believing that a safe crossing could be made, the plaintiff proceeded into the intersection ahead of the truck. The plaintiff’s automobile was 5 feet from the east edge of Seventh Avenue and well into the east lane of travel when struck broadside by the truck. Summers saw the automobile only an instant before the crash.
The court, in its opinion, said:
“First of all, it would appear that Summers was not keeping a proper lookout, for he did not see the Meles’ automobile until an instant before the impact.
“Next, it could reasonably be inferred from the evidence that the truck was exceeding the speed limit of 25 miles per hour at the time of the collision, and that Summers may not have had his truck under proper control.
“And finally, although the truck would ordinarily be entitled to the right of way, as the vehicle on the right at the intersection, there may have been such a preemption thereof by the driver of the automobile as to require the driver of the truck in the exercise of ordinary care to yield the right of way.
******
“Mr. Mele came very close to being guilty of contributory negligence-as a *91 •matter of law, but we are unable to say without any doubt that there was not a genuine issue as to this point. Therefore, the question was for the .jury and should not have been resolved •upon the motion for summary judgment. Manning v. Clark, Fla.1954, 71 So.2d 508; Williams v. City of Lake City, Fla.1953, 62 So.2d 732.”
I would reverse the cause for a new trial.