CAMPBELL, Judge.
Appellant, Gerald G. Michalek, plaintiff below, appeals the final summary judgment for appellees, David E. and June Shu-mate, defendants below. The trial court held that the doctrine of dangerous instrumentality did not apply and therefore ap-pellees were not liable to appellant for injuries he received when his vehicle was struck by a car owned by appellees. We affirm.
The pertinent, undisputed facts show that at the time of the collision, appellees’ car was being operated by an employee of Ralph’s Car Cleaning. Appellee June Shu-mate had called Ralph’s Car Cleaning for an appointment to have her car cleaned. Ralph’s Car Cleaning had sent an employee to Mrs. Shumate’s place of employment to pick up her car. As the employee was leaving Mrs. Shumate’s place of employment in her car, he collided with a vehicle occupied by appellant.
Appellant’s complaint alleges only that at the time of the accident, appellees’ car was being operated by a Ralph’s Car Cleaning employee with appellee’s consent and that the employee’s negligent operation of the car caused the collision with appellant’s vehicle. The complaint does not allege that appellees were negligent except for their entrustment of the vehicle to Ralph’s Car Cleaning employee.
The supreme court originally applied the dangerous instrumentality doctrine to automobiles in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975 (Fla.1917) and Anderson v. Southern Cotton Oil Co., 80 Fla. 441, 86 So. 629 (Fla.1920). Here, *378 the trial judge held that the doctrine did not apply because of the exception enunciated in Castillo v. Bickley, 368 So.2d 792 (Fla.1978). We agree with the trial judge. Because this decision conflicts with Jack Lee Buick, Inc. v. Bolton, 377 So.2d 226 (Fla. 1st DCA 1979), we write to explain what we conclude should be the correct application and construction of the exception announced in Castillo.
First, we must analyze the development of the dangerous instrumentality doctrine and its exceptions since Southern Cotton Oil. In Weber v. Porco, 100 So.2d 146 (Fla.1958), the supreme court emphasized that since Southern Cotton Oil, it had consistently applied the rule of respondeat superior to find the owner liable where he had entrusted his automobile to another and the other drove it with the owner’s permission or consent. In Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla.1959), the supreme court announced a much broader principle of owner liability under the dangerous instrumentality doctrine. The court stated:
[W]hen control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature.
112 So.2d at 835-836.
This court in Fry v. Robinson Printers, Inc., 155 So.2d 645 (Fla. 2d DCA 1963) refused to apply the doctrine to an accident that occurred when the automobile owner had left its vehicle at a service station for minor repairs, and a service station employee who was driving the vehicle onto a service rack injured a fellow employee. In Fry, this court, albeit without citation of any supporting authority, held:
[W]e find nothing in the decisions applying the “dangerous instrumentality doctrine” to justify a holding that where an owner leaves his automobile at a service station for repairs or servicing he is liable solely by reason of ownership for the negligent operation thereof by one employee resulting in injury to another employee of the service station....
155 So.2d at 646.
In Petitte v. Welch, 167 So.2d 20 (Fla. 3d DCA 1964), cert. denied, 172 So.2d 598 (Fla.1965), the third district considered a case where an owner left his car in the possession of a service station operator and while in such possession a third person drove it on the premises of the service station and injured another person. The court in Petitte affirmed the trial court’s dismissal of the injured parties’ complaint for failure to state a cause of action against the automobile owner. The Petitte court refused to distinguish Fry on the facts and applied the respondeat superior limitation to the doctrine of dangerous instrumentality. The court held that the complaint affirmatively demonstrated that “the automobile was not being operated by an agent or servant of the defendant, owner, but on the contrary that it was being operated by a person under the direction and control of the filling station operator.” 167 So.2d at 22.
In Florida Power and Light Co. v. Price, 170 So.2d 293 (Fla.1964), the supreme court considered a case invoking the dangerous instrumentality doctrine as applied to the construction and energizing of an electrical power distribution system instead of an automobile. The court applied an independent contractor exception to the liability of an owner under the dangerous instrumentality doctrine. In doing so, the Price court analogized the independent contractor situation before it with the exceptions to the dangerous instrumentality doctrine stated in Fry and Petitte. 170 So.2d at 297.
In Price, the court held:
[Liability flowing from operation of the doctrines of dangerous instrumentalities and inherently dangerous work is subject to the exception that where the defendant owner contracts with an independent contractor ... and the latter’s employee is injured by a dangerous instrumentality *379 owned by the defendant which is negligently applied or operated by another employee of the independent contractor but wholly without any negligence on the part of the defendant owner, the latter will not be held liable.
170 So.2d at 298. The court illustrated the exception by stating, “For example ... where an automobile is left with a filling station operator for service and it is negligently operated by an attendant without liability over to its owner.” Price, 170 So.2d at 298.
This court then, in Patrick v. Faircloth Buick Co., 185 So.2d 522 (Fla. 2d DCA 1966), cert, discharged, 198 So.2d 825 (Fla. 1967), expressly relied on Fry, Price and Petitte in upholding a summary judgment for a defendant automobile owner. In Faircloth Buick, the owner’s wife had delivered the automobile for service to an automobile service agency. She requested that someone from the agency ride home with her and then return the automobile to the agency for servicing. The agency employee injured the third party plaintiff on the agency premises as he was driving the owner’s car back to the agency.
A divergent line of cases then began to appear with the case of Jordan v. Kelson, 299 So.2d 109 (Fla. 4th DCA 1974), cert. denied, 308 So.2d 587 (Fla.1975). In that case, the court relied only upon Southern Cotton Oil and did not cite Fry, Price, Petitte or Faircloth Buick. The court held that the owners of an automobile are liable for injuries to a third party where the injuries were sustained when an employee of an automobile repair shop was operating the owners’ car. The owners had delivered the car for repairs to the repair shop. When the repairs had been completed, the owners requested and the repair shop agreed to return the car to them. While en route to the owner’s residence, the car, operated by the repair shop employee, was involved in the accident injuring the third party.
Apparently in direct conflict with express statements in Weber, Price, Fry, Petitte and Faircloth Buick, the court in Jordan held in regard to the dangerous instrumentality doctrine that:
This form of vicarious liability is not based on respondeat superior or an agency conception, but on the practical fact that the owner of an instrumentality ... should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent. (Citing Southern Cotton Oil.) (Emphasis supplied.)
299 So.2d at 111.
In Harfred Auto Imports, Inc. v. Yaxley, 343 So.2d 79 (Fla. 1st DCA 1977), the first district also, as we have here, analyzed Southern Cotton Oil, Fry, Faircloth Buick, Petitte and Jordan. It then apparently ignored Jordan and concurred with what it stated the “majority rule” to be, that is:
In the absence of negligence on the part of the owner, an independent contractor should be solely liable for negligent operation of the automobile during the period in which it has custody of it. We find no proper basis for a limitation of this ruling to cases in which the accident occurs on the premises of the independent contractor.
343 So.2d at 82.
The fourth district then apparently returned to the “majority rule” in Fahey v. Raftery, 353 So.2d 903 (Fla. 4th DCA 1977), finding an automobile owner not liable when the owner’s car was involved in an accident while operated by an employee of a valet parking lot concession at a restaurant. The Fahey court distinguished the apparent conflict with Jordan by observing that in Jordan, the service station operator was gratuitously returning the automobile to the owner at the owner’s request, while in Fahey the parking service was part of the independent service provided at the restaurant. We perceive that distinction to be a difference without substance or logical reason and is one of the reasons we write here to attempt to state a rule that has more clarity in its application.
It appeared that the supreme court in Castillo finally established the rule, at least as it applies to situations involving *380 automobile owners who relinquish possession of their automobiles to automotive service agencies. There, the supreme court expressly approved the limitations that Harfred Auto Imports, Faircloth Buick and Petitte had imposed on the broad liability doctrine announced in Susco.
The Castillo court stated:
For these reasons, we hold that the owner of a motor vehicle is not liable for injuries caused by the negligence of the repairman or serviceman with whom the vehicle has been left, so long as the owner does not exercise control over the injury-causing operation of the vehicle during the servicing, service-related testing, or transport of the vehicle, and is not otherwise negligent. (Emphasis supplied.)
363 So.2d at 793. It seems to us that the Castillo exception to the dangerous instrumentality doctrine is clearly stated and is itself without subjective exceptions. However, our colleagues of the first district in Jack Lee Buick have in their wisdom found that the Castillo “exception has only limited application, and is confined to accidents occurring while the vehicle is in the hands of the servicing agency for work-related purposes_” 377 So.2d at 227.
In Jack Lee Buick, the auto owner, a used car dealership, had contracted with an auto cleaning establishment to clean its cars. The cleaning service did not require operation of the vehicles except to pick them up and return them to the owner. During one of those trips, while the vehicle was operated by an employee of the cleaning establishment, an accident occurred and the owner was held liable. The court in Jack Lee Buick affirmed. It did so by apparently distinguishing the type of automobile service agency to which an owner has entrusted its vehicle. We do not feel such a subjective distinction between types of automotive service agencies is warranted by the rule as announced by the supreme court in Castillo. The Jack Lee Buick court states that they did not “detect” in the Castillo decision any intention to “ ‘pare back’ the dangerous instrumentality doctrine in service station and repairmen situations ... so as to relieve the owner of liability for accidents while the automobile is simply ‘going or coming’ to or from the owner to the place where the repairs take place.” Jack Lee Buick, 377 So.2d at 228.
While the Jack Lee Buick court does not ignore the Castillo exceptions pertaining to “transport ” of the vehicle, the Jack Lee Buick opinion inexplicably explains “transport” away by stating: “[W]e further reject appellant’s contention that Castillo extended the rule of exception to the ‘transport’ of the vehicle to and from the owner where the operation of the vehicle is unrelated to the purpose for which the vehicle was entrusted to the repair or service agency.” Jack Lee Buick, 377 So.2d at 228. That reasoning apparently limits “transport” to some action directly involved in the repair or service, such as road-testing or moving the vehicle from place to place on the service agency’s premises.
We, on the other hand, can detect neither language nor intent in the Castillo opinion to construe “transport” to exclude the transport of a vehicle between the owner and the service agency. To not apply “transport” to transport between the owner and the service agency would be contrary to the holding in Faircloth Buick, which the supreme court in Castillo cited with approval. Any such transport is as much a part of securing the service or repairs as is moving the vehicle about the service agency’s premises during the actual repairs. An owner should be able to rely upon a clearly defined objective standard of liability or limitation of liability and not a standard that is subjectively applied to varying situations that are infinitesimally distinguishable.
We have had cited to us Fort Myers Airways, Inc. v. American States Insurance Co., 411 So.2d 883 (Fla. 2d DCA 1982). Fort Myers Airways involved an appeal from a declaratory judgment that interpreted the rights and obligations of the parties under a policy of insurance. This court, in construing the policy, looked only to the independent contractor exception to the *381 dangerous instrumentality doctrine as announced in Castillo.
We affirm the summary judgment.
SCHEB, A.C.J., and SCHOONOVER, J., concur.